IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **CONTINENTAL CASUALTY COMPANY,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | EP-10-CV-102-KC |
| **F-STAR PROPERTY MANAGEMENT, INC.,** | § § § § | |
| Defendant. | § | |

# ORDER

On this day, the Court considered Plaintiff's "Motion for Partial Summary Judgment on Defendant's Code Upgrades Claim" ("Motion on Code Upgrades"), ECF No. 20; Plaintiff's "Motion for Partial Summary Judgment on Defendant's Replacement Cost Claim" ("Motion on Replacement Cost"), ECF No. 21; Plaintiff's "Motion for Partial Summary Judgment on Defendant's Claim for Time Element Losses" ("Motion on Time Element Losses"), ECF No. 22; Plaintiff's "Motion to Strike Defendant's New Roof Damage Claim and Supporting Expert Testimony" ("Motion to Strike New Roof Claim"), ECF No. 23; and Plaintiff's "Motion to Strike Defendant's Non-Retained Expert Designations" ("Motion to Strike Designations"), ECF No. 24. For the reasons set forth herein, the Motion on Code Upgrades is **GRANTED**, the Motion on Replacement Cost is **DENIED**, the Motion on Time Element Losses is **GRANTED**, the Motion to Strike New Roof Claim is **DENIED** as moot, and the Motion to Strike Designations is **GRANTED**.

1

## I. BACKGROUND

Unless otherwise noted, the following facts are undisputed. Plaintiff issued all-risk commercial property insurance policy number 2068170265 to Defendant with effective dates of coverage from July 9, 2009, to July 9, 2010. Proposed Undisputed Facts ¶ 1, ECF No. 21-1. The insurance policy "insures against all risks of direct physical loss of or damage to property and/or interests described herein." Proposed Undisputed Facts Ex. A ("Policy"), at 8, ECF No. 21-2. The insurance policy defines "replacement cost" as "the cost to repair or replace lost or damaged property with property of comparable material and quality on the same or another site, and used for the same purpose, without deduction for depreciation, deterioration, and obsolescence." *Id.* at 43. The insurance policy defines "actual cash value" to mean "the replacement cost with deduction for depreciation, deterioration and obsolescence." *Id.*

Defendant alleges that twenty-seven of its buildings in the El Paso, Texas, area were damaged during a September 16, 2009, hail storm. Proposed Undisputed Facts ¶ 3. After Defendant submitted a claim for reimbursement stemming from damages sustained during the hail storm, Plaintiff hired Calvary Construction to assist it in valuing Defendant's hail claim. *Id.* ¶ 4. Calvary Construction calculated the replacement cost value of Defendant's hail claim to be $6,349,789.04. *Id.* ¶ 5. According to Plaintiff, Calvary Construction also calculated the amount of depreciation to subtract from the replacement cost to determine the actual cash value of various elements of Defendant's hail claim. *Id.* ¶ 6. Calvary Construction calculated the total amount of depreciation to be withheld from F-Star's hail claim to be $1,810,048.41. *Id.* ¶ 7. Plaintiff contends that on March 4, 2010, it tendered $4,539,740.63 to Defendant, or the actual cash value of Defendant's hail claim as calculated by Calvary Construction. *Id.* ¶ 9.

Defendant alleges that a cold-storage building located in El Paso, Texas, sustained damage to its roof as a result of a December 8, 2009, windstorm. *Id.* ¶ 10. After Defendant submitted a claim for reimbursement stemming from damages sustained during the windstorm, Plaintiff employed Calvary Construction to assist it in valuing Defendant's wind loss claim. *Id.* ¶ 11. Calvary Construction calculated the cost to repair the wind damage to the building to be $436,027.39. *Id.* ¶ 12. Calvary Construction calculated the depreciation to be withheld as $99,978.24. *Id.* ¶ 14. According to Plaintiff, on February 23, 2010, Plaintiff tendered $326,049.15 to Defendant, or the actual cash value of Defendant's wind claim as calculated by Calvary Construction. *Id.* ¶ 15.

On March 15, 2010, Plaintiff filed an action seeking declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, seeking declarations that: (1) it has complied with the terms of the insurance policy and tendered all amounts due for Defendant's wind and hail claims, (2) that coverage is limited to amounts tendered, and (3) that Defendant is not entitled to replacement costs because it has not complied with the relevant terms of the insurance policy. Pl.'s Original Compl. for Declaratory J. ¶ 17, ECF No. 1. Defendant answered and asserted several counterclaims, Original Answer, Countercl. and Jury Demand of F-Star Property Management, Inc., ECF No. 6, after which Plaintiff filed the instant motions currently before the Court.

II.  **DISCUSSION**

    A.  **Standard**

Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials[,]" or show "that the materials cited by the movant do not establish the absence . . . of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). The court resolves factual controversies in favor of the nonmoving party; however, factual controversies require more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, the court must draw all reasonable inferences in favor of the nonmoving party, and may not make

4

credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478-79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

      **B.**      **Motion on Code Upgrades**

Plaintiff argues it is entitled to summary judgment on Defendant's counterclaim for compensation to upgrade its air conditioning ("HVAC") units so as to conform to the 2009 International Energy Conservation Code. Mot. 1. Defendant does not disagree, and has abandoned the portion of its counterclaims seeking recovery for HVAC unit upgrades. F-Star Property Management, Inc.'s Abandonment of 2009 International Energy Conservation Code Upgrades Claim 1, ECF No. 28. Therefore, the Court **GRANTS** Plaintiff's Motion on Code Upgrades.

      **C.**      **Motion on Replacement Cost**

Plaintiff contends that it is entitled to summary judgment on Defendant's counterclaim for replacement cost because Defendant has not complied with the terms of the insurance policy requiring Defendant to commence repairs within one year, or that even if Defendant did commence repairs within one year, it did not complete those repairs. Mot. on Replacement Cost 2-9. The Court disagrees.

Generally, courts construe insurance policies according to the same rules of construction that apply to contracts. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Crocker*, 246 S.W.3d 603, 606 (Tex. 2008). The policy's terms are given their ordinary and generally accepted meaning

unless the policy shows that the words were meant in a technical or different sense. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). If the terms in the contract can be given a definite or certain legal meaning, they are not ambiguous, and the court will construe the contract as a matter of law. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). However, if the policy is susceptible to more than one reasonable interpretation and is thus ambiguous, courts must resolve the uncertainty by adopting the construction that most favors the insured. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Hudson Energy Co., Inc.*, 811 S.W.2d 552, 555 (Tex. 1991). An ambiguity does not exist simply because the parties interpret a policy differently. *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003).

Here, the insurance policy values property, in relevant part, as follows:

> All Other Property at the least of:
> (1) the cost to repair;
> (2) the *replacement cost* with property of like kind and quality, and performing the same function or purpose;
> (3) the actual expenditure incurred in repairing or replacing the damaged property;
>
> However, if within one (1) year the process of repair, rebuilding or replacement in accordance with the provisions of this section (Section *IV.12.*), has not begun then the value of the property will be *actual cash value*.
>
> For the purposes of this Valuation section:
> The term *replacement cost* as used here means the cost to repair or replace lost or damaged property with property of comparable material and quality on the same or another site, and used for the same purpose, without deduction for depreciation, deterioration, and obsolescence;
>
> The term *actual cash value* as used here means the replacement cost with deduction for depreciation, deterioration and obsolescence.

Policy 42-43 (emphasis in original).

6

This language contained in the Policy is not ambiguous, *see CBI Indus.*, 907 S.W.2d at 520, so the Court applies their clear and definite meaning. *See Gilbert*, 327 S.W.3d at 126. As per the terms of the Policy, Defendant must commence repairs within one year in order to be compensated for the replacement cost; failure to do so limits compensation to actual cash value. *Id.* The Court notes, however, that Plaintiff concedes there may be fact issues regarding the calculation of replacement cost. Mot. on Replacement Cost 2 n.1. Plaintiff seeks summary judgment on Defendant's counterclaim for replacement costs based solely on whether Defendant is precluded from recovery of replacement cost due to failure to commence repairs within one year. *Id.* Therefore, the Court limits its analysis to that issue.

Both parties agree that the Policy does not clearly state when the one year period within which repairs must commence begins. Mot. on Replacement Cost 8; F-Star Property Management, Inc.'s Resp. in Opp'n to Continental Casualty Company's Mot. for Partial Summ. J. on Replacement Costs ¶ 4, ECF No. 29. Both parties also agree that repairs must commence within one year after Plaintiff tendered the actual cash value payment, which occurred on March 4, 2010. Mot. on Replacement Cost 8; F-Star Property Management, Inc.'s Resp. in Opp'n to Continental Casualty Company's Mot. for Partial Summ. J. on Replacement Costs ¶ 4. Therefore, Defendant must have commenced the process of repairs by March 4, 2011, in order to be eligible to recover replacement cost value of its repairs.

In Defendant's supplemental response to Plaintiff's Motion on Replacement Cost, Defendant submits at least two depositions that indicate that repairs had commenced prior to March 4, 2011. F-Star Property Management, Inc.'s Supplemental Resp. in Opp'n to Continental Casualty Company's Mot. for Partial Summ. J. On Replacement Costs Claim ¶¶ 7-10, Exs. 2-6,

7

ECF No. 50.  Plaintiff therefore is not entitled to judgment as a matter of law based on Defendant's failure to commence repairs within one year.

Plaintiff argues that even if Defendant commenced repairs within one year, it is still entitled to summary judgment on Defendant's counterclaim for replacement cost because Defendant has not completed those repairs within one year.  Mot. on Replacement Cost 9.

In this case, the Policy limits Defendant's recovery to actual cash value "if within one (1) year the process of repair, rebuilding or replacement . . . *has not begun*."  Policy 42 (emphasis added).  Because this language contained in the Policy is not ambiguous, *see CBI Indus.*, 907 S.W.2d at 520, the Court applies their clear and definite meaning.  *See Gilbert*, 327 S.W.3d at 126.  The Court finds that unlike the language contained in other insurance policies, Defendant foregoes replacement cost only if it fails to begin the repair process within one year, not if it fails to complete the repair process within one year.  *Cf. Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 845 (5th Cir. 2010) (text of policy requires a claimant to "repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment" to obtain replacement cost); *Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 737-38 (5th Cir. 2010) (holding the plaintiff's claim for replacement cost was properly dismissed because the plaintiff failed to complete repairs and the policy stated "[u]ntil replacement has been effected the amount of liability under this Policy in respect of loss shall be limited to actual cash value at the time of loss").

There is a genuine dispute of material fact as to whether Defendant commenced repairs within one year of Plaintiff tendering actual cash value payment to Defendant.  Furthermore, pursuant to the plain language of the Policy, Defendant need not complete repairs within one year

8

in order to be entitled to replacement costs. Therefore, the Court **DENIES** Plaintiff's Motion on Replacement Cost.

### D. Motion on Time Element Losses

Plaintiff contends it is entitled to summary judgment on Defendant's counterclaim for business interruption losses, extra expenses, expediting expenses, and rental value expenses ("time element losses") because only actual losses incurred are recoverable and Defendant has failed to demonstrate any time element losses actually sustained. Mot. on Time Element Losses 4-8. The Court agrees.

The Court applies the same principles of contract interpretation articulated above to the Policy's provisions on time element losses. The Policy provides for the recovery of certain business interruption losses. Policy 9-10. However, "[i]n the event of . . . physical damage or destruction, the Company shall be liable for the *actual loss sustained* by the Insured resulting directly from such interruption of business." *Id.* at 10 (emphasis added). With respect to expediting expenses, Plaintiff "will pay reasonable and necessary costs *incurred* by the Insured to expedite repairs to covered property following loss or damage covered under this policy." *Id.* at 16 (emphasis added). The Policy provides for recovery of "reasonable and necessary extra expense . . . *incurred* by the Insured in order to continue as nearly as practicable the normal operation" of business. *Id.* at 17 (emphasis added). Finally, losses of rental value resulting from "untenability of insured premises" are limited to "the *actual loss sustained* by the Insured." Policy 22 (emphasis added). Once again, because this language contained in the Policy is not ambiguous, *see CBI Indus.*, 907 S.W.2d at 520, the Court applies their clear and definite meaning. *See Gilbert*, 327 S.W.3d at 126. The clear and definite meaning of the language

quoted above is that only time element losses that have already been incurred by the Insured are recoverable at this time under the Policy.

To demonstrate a genuine dispute of material fact as to whether it has sustained any actual time element losses, Defendant offers a deposition and a spreadsheet of itemized expenses. Defendant cites as evidence of losses a deposition from its President Edna Lopez that repairs have in fact commenced. F-Star Property Management, Inc.'s Resp. in Opp'n to Continental Casualty Company's Mot. for Partial Summ. J. on Time Element Losses 1, ECF No. 30. However, that repairs have commenced does not establish that Defendant has incurred business interruption losses, extra expenses, expediting expenses, or losses associated with rental value. In fact, Edna Lopez never contends that F-Star has incurred any such losses. The spreadsheet Defendant sent to Plaintiff is equally unavailing. That spreadsheet contains only a list of itemized expenses for which Defendant seeks reimbursement from Plaintiff, not a list of expenses actually incurred. *See* Mot. on Time Element Losses Ex. B1, ECF No. 22-3.

The Court finds that there is no genuine dispute of material fact as to whether Defendant has incurred any actual time element losses at this time. Should Plaintiff deny reimbursement of covered time element losses actually incurred by Defendant in the future, then Defendant could potentially assert a claim accordingly. However, that claim is not before the Court. The Court **GRANTS** summary judgment in favor of Plaintiff with respect to Defendant's counterclaim for time element losses as currently before the Court.

### E. Motion to Strike New Roof Claim

Plaintiff seeks summary judgment on Defendant's counterclaim for damages arising from replacement of several roofs and to strike supporting expert testimony. Mot. to Strike New Roof

Claim. However, Defendant has agreed to withdraw these claims, to refrain from calling supporting expert witnesses, and that Plaintiff's Motion to Strike New Roof Claim is therefore moot. Agreed Stipulation Regarding F-Star's EPDM Roof Claim 1-2, ECF No. 43. Accordingly, the Court **DENIES** as moot Plaintiff's Motion to Strike New Roof Claim.

### F. Motion to Strike Designations

Plaintiff seeks to strike certain of Defendant's non-retained expert designations for failure to comply with Federal Rule of Civil Procedure 26(a)(2)(C)(ii). Mot. to Strike Designations. Defendant responds with information concerning individuals whose expert designations Plaintiff does not seek to strike, and therefore provides the Court with minimal pertinent information. *See* F-Star Property Management, Inc.'s Resp. in Opp'n to Continental Casualty Company's Mot. to Strike Non-Retained Expert Witness Designations, ECF No. 33.

Federal Rule of Civil Procedure 26(a)(2)(C) governs mandatory disclosures concerning non-retained experts. Fed. R. Civ. P. 26(a)(2)(C). A party must provide disclosures stating both the subject matter on which the non-retained expert is expected to present evidence and a summary of the facts and opinions as to which the non-retained expert is expected to testify. Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii). "Absent a stipulation or a court order," these disclosures must be made "at least 90 days before the date set for trial or for the case to be ready for trial." Fed. R. Civ. P. 26(a)(2)(D)(i). "If a party fails to provide information . . . as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004). In determining whether the failure to provide required disclosures regarding expert witnesses is harmless, a court considers: "'(1) the

importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose.'" *Primrose*, 382 F.3d at 564 (quoting *Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003)).

In this case, Defendant's disclosures regarding the non-retained experts at issue contain the subject matter that the experts will testify to but lack a summary of the facts and opinions of the experts' expected testimony. *See* Def.'s Designation of Testifying Experts with Respect to Claims for Affirmative Relief 3-6, ECF No. 18. Accordingly, the Court finds that Defendant's disclosures violate Federal Rule of Civil Procedure 26(a)(2)(C)(ii). Defendant disclosed information pertaining to its experts on March 8, 2011. *Id.* Thereafter, Plaintiff contacted Defendant on four separate occasions and requested that Defendant supplement its disclosures with a summary of facts and opinions that Defendant's experts would testify to. Mot. to Strike Designations 1-2, Exs. A, B, D, E, ECF No. 24-1. As of the date of this Order, Defendant has yet to respond and correct the deficiencies.

Having found Defendant's expert disclosures deficient and in violation of Federal Rule of Civil Procedure 26(a)(2)(C)(ii), the Court proceeds to determine whether the failure to provide this information is harmless. *See* Fed. R. Civ. P. 37(c)(1); *Primrose*, 382 F.3d at 563. Defendant has offered no information in its response indicating the importance of its non-retained experts' testimony or an explanation for its failure to disclose the required information despite Plaintiff's repeated requests that Defendant do so. Those two factors weigh in favor of exclusion. *See Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380-82 (5th Cir. 1996) (noting that the importance of testimony alone does not override the enforcement of local rules and scheduling orders and the

plaintiff failed to offer an explanation for failure to timely disclose information pertaining to experts in affirming exclusion of experts).

Next, the Court finds that Plaintiff would be prejudiced if Defendant's expert designations were not struck despite Defendant's failure to disclose required information. Upon receiving a summary of facts and opinions of Defendant's experts, Plaintiff could decide whether to expend the necessary resources to depose those expert witnesses. Without that information, Plaintiff is hindered in its ability to determine whether such an expenditure is necessary to its case. What's more, to allow the experts to testify so close to the August 5, 2011, trial date with such little time for Plaintiff to depose the experts of organize rebuttal evidence unduly prejudices Plaintiff. Furthermore, the Fifth Circuit has noted that a delay of even a few weeks in disclosing expert testimony disrupts the court's schedule and the opponent's preparation and is thus prejudicial. *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (citations omitted). Finally, although courts consider the possibility of curing such prejudice by granting a continuance, *Primrose*, 382 F.3d at 564, Defendant has offered "no reason to believe a continuance would . . . cure their dilatory behavior." *See Barrett*, 95 F.3d at 381. Defendant has failed to correct its deficient disclosures despite four requests to do so, and the Court finds no reason to believe a continuance would result in Defendant's compliance. Therefore, the Court finds that Defendant's failure to timely submit required expert disclosures is not harmless and is therefore subject to exclusion pursuant to Federal Rule of Civil Procedure 37(c)(1).

The parties have stipulated that Defendant's non-retained experts Art Long, Jeff Stone, and Paul Sheppard are struck as Federal Rule of Civil Procedure 26(a)(2) experts and will not be called as fact witnesses at trial. Agreed Stipulation 1, ECF No. 46. Accordingly, the Court

**DENIES** as moot Plaintiff's Motion to Strike Designations as to these individuals and **GRANTS** the motion with respect to all remaining individuals for which Plaintiff seeks relief.

G. **Ripeness**

The Court is concerned that after ruling on these motions, the case no longer presents a justiciable controversy due to a lack of ripeness. Actions for declaratory judgment must be justiciable, and justiciability is required for courts to have subject matter jurisdiction. *See Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). "[A] declaratory judgment action, like any other action, must be ripe in order to be justiciable." *Id.* at 896 (citing *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000)). "A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987) (citing *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 581 (1985)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998).

In this case, it is unclear whether the outstanding claims involve purely legal questions or require further factual development. For instance, Plaintiff seeks a declaration that coverage under the Policy is limited to amounts thus far tendered by Plaintiff. Pl.'s Original Compl. for Declaratory J. ¶ 17, ECF No. 1. However, it is not possible to determine whether Defendant is entitled to recover covered expenses associated with time element losses until those expenses are actually incurred, which is not ascertainable until repairs are complete. Until then, it may not be possible to determine whether Plaintiff owes any further amounts to Defendant under the Policy,

and a judgment declaring as much could require further factual development. *See New Orleans Pub. Serv.*, 833 F.2d at 587. Furthermore, that event, namely whether Defendant sustains expenses associated with time element losses, may be "a future event that may not occur as anticipated, or indeed may not occur at all." *See Texas*, 523 U.S. at 300.

Therefore, the parties are **ORDERED** to submit to the Court briefing with citation to relevant legal authority regarding the ripeness of all outstanding claims, including all declarations Plaintiff seeks and all of Defendant's counterclaims, by **Friday July 22, 2011**. The briefs shall be limited to twenty (20) pages each.

### III. CONCLUSION

For the foregoing reasons, the Motion on Code Upgrades, ECF No. 20, is **GRANTED**, the Motion on Replacement Costs, ECF No. 21, is **DENIED**, the Motion on Time Element Losses, ECF No. 22, is **GRANTED**, the Motion to Strike New Roof Claim, ECF No. 23, is **DENIED** as moot, and the Motion to Strike Designations, ECF No. 24, is **GRANTED**.

**SO ORDERED**.

**SIGNED** on this 15th day of July, 2011.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE